UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JOSEPH P. DYER, III                )
                                   )
            *Petitioner*           )
v.                                 )        No. 1: 01-cv-392
                                   )        *Judge Edgar*
                                   )
JAMES MORROW                       )
                                   )
            *Respondent*           )

## MEMORANDUM

This case has a long and tortured past. The time has now come to put it to rest. In 1975, Petitioner Joseph P. Dyer was convicted in the Tennessee state courts on two counts of first degree murder, and two counts of grand larceny. He was originally sentenced to death for each of the murders. However, while his state appeals were pending, Tennessee's death penalty statute as it then read was declared unconstitutional, and the death sentences were commuted to life imprisonment.

Dyer has been denied parole by Tennessee's Board of Probation and Parole ("Board") on several occasions. The parole hearing giving rise to this particular case occurred in 1998. The statutory parole standard in effect at the time of that hearing, differed in some respects from the standard that was in effect at the time of Dyer's convictions.

At the time of Dyer's convictions, Tenn. Code Ann. § 40-3614(1974), provided "...if there is a reasonable probability that if such prisoner is released he will live and remain at liberty without violating the law, and *that his release is not incompatible with the welfare of society*...such prisoner

1

*shall* be allowed to go upon parole." (Emphasis added). By the time of Dyer's 1998 parole hearing the Tennessee legislature had enacted legislation which revised the standard. Part of the revised standard, found in Tenn. Code Ann. § 40-28-117(a) (1998), is identical to the previous standard except that it substituted "may" for "shall". There was a further revision in the standard which prohibited parole if "the release from custody at the time would depreciate the seriousness of the crime of which the defendant stands convicted or promote disrespect for the law." Tenn. Code Ann. § 40-35-503(b)(2) (1998).

Dyer was denied parole in 1998 under the revised parole standard and he filed this habeas case pursuant to 28 U.S.C. § 2254, claiming that the Board violated the Ex Post Facto Clause in Article 1, § 10, cl.1 of the United States Constitution when it applied the revised parole standard in denying him parole. In *Dyer v. Bowlen*, 465 F. 3d 280 (6th Cir. 2006), the Court of Appeals (over a dissent) concluded that if Dyer could produce specific evidence of a risk of increased punishment under the new parole standard, that standard as it applied to Dyer would violate the Ex Post Facto Clause. The Court of Appeals vacated the earlier judgment of this Court and remanded the case for further proceedings to allow Dyer an opportunity "...to demonstrate a sufficient risk of increased punishment that is either inherent on the face of the new statute or is evidenced by the statutes' practical implementation." 465 F. 3d 288-89.

Upon remand, this Court appointed counsel for Dyer. Appointed counsel, as well as the State of Tennessee, devoted considerable time and effort to obtaining all available Tennessee parole records. Nonetheless, it became manifestly evident that the State simply does not have records from which Dyer can demonstrate what effect, if any, the new standard has had on the granting or denying of parole. Thus, as a practical matter, it is not possible for this Court to conduct a meaningful

evidentiary hearing in accordance with the instructions from the Court of Appeals.

As both the Supreme Court and the Court of Appeals have said, to make out an Ex Post Facto violation it is incumbent upon an inmate to demonstrate that the revised parole standard presents "a significant risk of increased punishment, that is either inherent upon the face of the new statute's or is evidenced by the statutes' practical implementation." *Garner v. Jones*, 529 U.S. 244, 255(2000); *Dyer*, 465 F.3d at 288-89. Dyer's inability to make this required showing should itself justify granting judgment to the respondent. See *Teague v. Cox*, 2008 WL 2518699(E.D.Tenn June 19, 2008). However, since the problem lies with the condition of the State's records rather than any fault or lack of effort on Dyer's part, this Court on April 1, 2009 [Doc. No. 84] determined that the only means available to insure that Dyer has not been treated less favorably under the new parole standard was to direct the Board to conduct another parole hearing for Dyer using the standard that was in effect at the time of Dyer's conviction.[1] This remedy was suggested in the dissent to the Court of Appeals opinion. *Dyer*, 465 F.3d at 295.

On June 25, 2009, the Board held a hearing to determine Dyer's eligibility for parole under the statutory standard as it existed at the time of Dyer's conviction. Parole was denied. The case is now before this Court on respondent's motion for summary judgment [Doc. No. 91], which Dyer opposes.

I.      **Standard of Review**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the

---

[1] Actually Dyer has had at least two parole hearings since the commencement of this habeas case. Since it was unclear to the Court that the Board used the old parole standard in a hearing conducted on March 27, 2008. This Court on April 1, 2009 entered an order specifically directing that a second hearing be held and that it be transcribed by a court reporter to permit review by this Court to insure that the old standard was indeed utilized.

3

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L. Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L. Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252; *see also Bailey v. Floyd County Bd. of Educ.*, 106

F.3d 135, 140 (6th Cir. 1997). If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

II.    **Analysis**

At issue here is whether the June 25, 2009, parole hearing was indeed conducted in accordance with the standard that was in effect at the time of Dyer's convictions. There is now no question about what was said and done at the hearing. As recited above, the old statutory standard required in relevant part that parole *shall* be granted, but only if two criteria are met;

(1)    If the Board is of the opinion that there is reasonable probability that such prisoner is released he will live and remain at liberty without violating the law; and

(2)    That his release is not incompatible with the welfare of society.

At the June 25, 2009, hearing the Board's chairman stated clearly "...this hearing will be held in accordance with the statutory scheme that existed at the time of this offense." (Transcript page 10)(See also Transcript pp. 6, 49).[2] After hearing from Dyer, one of Dyer's attorneys, Dyer's father, as well as a sister and brother-in-law of a victim, the Board denied parole. The Board's rationale for the denial was that Dyer's release would not be compatible with the welfare of society. (Transcript pp. 73, 75, 79)(Notice of Board action, Addendum B to respondent's motion for summary judgment.)

The Board's chairman specifically mentioned deterrence as a reason for Dyer's release being

---

[2]    The transcript is appendix A to respondent's motion for summary judgment. It will be referred to herein as "Transcript".

incompatible with society's welfare. (Transcript p. 74). Once the Board made this determination, then it could not, under the old standard grant parole to Dyer. Therefore, whatever difference there may be between "shall" under the old standard and "may" under the new standard becomes meaningless.

Dyer contends that he still has not received a parole hearing under the old statutory standard. He now points to the statutory language under the old statutory scheme, which required all Board members to be physically present at the parole hearing. At the June 25, 2009 hearing only two members of the Board were present. However, the evidence was reviewed by at least two other Board members who initialed the "Notice of Board Action" which stated on its face that "to Parole Mr. Dyer at this time is not compatible with the welfare of society." Thus, four of the seven Board members, the two present at the hearing plus the two initialing the notice, approved of the Board's action. Dyer has made no showing, and there is no reason to believe, that the absence of some Board members from the hearing had any effect whatsoever on the granting or denial of parole. Dyer also points to earlier statutes that required Board members to consider each prisoner's "individual characteristics, circumstances, needs, and potentialities." The hearing transcript as a whole reveals that these factors, or the equivalent thereof, were in fact discussed at the hearing. Finally, Dyer says that he could have been helped by a pre-conviction Board regulation providing that Dyer was entitled to "a presumption of release because of his eligibility of parole in the first instance." The import of this old regulation is unclear, but any event the Board could not grant parole unless the statutory standards were met. Here the Board determined that they were not met.

In sum, because Dyer has now received a hearing under the statutory standard that existed when he committed his crimes and was convicted, he can not now complain that any statutory

changes in the rationale for granting parole, provide an increased risk of punishment either on their face or in their practical implementation. Respondent's motion for summary judgment [Doc. No. 91] will be GRANTED, and judgment will be entered denying Dyer's petition for a writ of habeas corpus under 28 U.S.C. § 2254.

SO ORDERED.

ENTER this the 13th day of January, 2010.

_____/s/ R. Allan Edgar_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE